IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CRUZ GUTIERREZ, § | |
| § | |
| Plaintiff § | |
| § | |
| v. § | Civil Action No. 3:11-CV-500-N-BK |
| § | |
| MICHAEL J. ASTRUE, § | |
| Commissioner of Social Security, § | |
| § | |
| Defendant. § | |

## FINDINGS, CONCLUSIONS, and RECOMMENDATION

Pursuant to *Special Order 3*, this case has been referred to the undersigned for Findings, Conclusions, and Recommendation. The Court now considers the parties' cross motions for summary judgment. For the reasons that follow, it is recommended that Plaintiff's *Motion for Summary Judgment* (Doc. 17) be DENIED, that Defendant's *Motion for Summary Judgment* (Doc 20) be GRANTED, and that the decision of the Commissioner be AFFIRMED.

### I.  BACKGROUND[1]

**A.   Procedural History**

Cruz Gutierrez seeks judicial review of a final decision by the Commissioner of Social Security denying his claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Title II and XVI of the Social Security Act (Act). On January 22, 2007, Plaintiff applied for DIB and SSI, claiming that he had been disabled since January 31, 2007, due to heart conditions, high blood pressure, and diabetes. (Tr. at 143, 150-51, 184).  His application was denied initially and on reconsideration, and Plaintiff timely requested a hearing

---

[1] The following background comes from the transcript of the administrative proceedings, which is designated as "Tr."

1

before an Administrative Law Judge (ALJ). (Tr. at 63-68, 72-75). On April 23, 2009, the ALJ issued his decision finding Plaintiff not disabled, which Plaintiff timely appealed to the Appeals Council. (Tr. at 14-15, 22-31). The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner. (Tr. at 5-9). Plaintiff timely appealed the Commissioner's decision to the United States District Court pursuant to 42 U.S.C. § 405(g).

B.  **Factual History**

    1.  **Age, Education, and Work Experience**

Plaintiff was born on March 28, 1960, and was 48 years old at the time of the ALJ's decision. (Tr. at 30-31). He has a tenth grade education and prior work experience as a display assembler, cell phone cleaner, janitor, housekeeper/cleaner, and office clerk. (Tr. at 39, 51).

    2.  **Medical Evidence**

Medical records dating back to 2006 indicate that Plaintiff suffers from coronary artery disease, hypertension, and diabetes mellitus. (Tr. at 250-52, 254-56, 270, 289, 293, 300, 305-06, 313, 346, 357, 376, 444, 484). Plaintiff's impairments were being treated through medication, diet and exercise. (Tr. at 252). Plaintiff also suffers from depression and anxiety/panic attacks, and is described as "irritable." (Tr. at 289, 293, 305-06, 316-21, 324, 346, 376, 435, 437, 441, 443, 455, 458, 461).

On April 12, 2007, Dr. John Durfor completed a physical Residual Functional Capacity (RFC) assessment. (Tr. at 276-86). Dr. Durfor opined that Plaintiff can frequently lift 25 pounds and 50 pounds occasionally, and can sit for 6 hours and stand and/or walk 6 hours in an 8 hour workday. (Tr. at 277). In addition, Dr. Durfor found that Plaintiff did not have a postural,

manipulative, visual, communicative, or environmental limitation. (Tr. at 278-280). Dr. Durfor concluded that "the alleged severity of limitations is not fully supported." (Tr. at 281).

From January 2007 to December 2008, Plaintiff was treated by Dr. Shounak Das at the Jackson Clinic. (Tr. at 323, 462). Records from Jackson Clinic indicate Plaintiff's hypertension and anxiety was stable during much of his treatment. (Tr. at 326, 330-31, 333-34, 337, 464, 471, 479, 486, 496).

On October 30, 2008, Plaintiff underwent a psychological evaluation. (Tr. at 446). Dr. Gerald Stephenson found that Plaintiff's thinking was simplistic and concrete, and his general mental ability was below average. (Tr. at 449-50). Dr. Stephenson diagnosed Plaintiff with depressive disorder, anxiety disorder with a history of panic attacks, alcohol dependence in partial remission, and mild mental retardation. (Tr. at 452). Dr. Stephenson concluded Plaintiff is unlikely to display higher mental ability in the future and would not be a good candidate for retraining for sedentary work. *Id*.

### 3. Hearing Testimony

The ALJ held a hearing on March 5, 2009, where Plaintiff, a vocational expert, and a medical expert testified. (Tr. at 32). Dr. Maxwell, the medical expert, was the first to testify. (Tr. at 35). After summarizing "a few new pages of evidence," the ALJ asked Maxwell if he had sufficient information to classify the impairments in the case, to which Maxwell responded that he did. (Tr. at 36). Maxwell opined that Plaintiff has a history of depression and likely has borderline intelligence, particularly with his verbal skills. (Tr. at 36). Plaintiff's lower IQ gives him problems learning new material and in terms of training. (Tr. at 36-37). Dr. Maxwell also testified that Plaintiff has a history of alcohol abuse and that "[t]he fact that he's still drinking as much as he's drinking is probably affecting his medication for depression, as well as his

performance." (Tr. at 37-38). Dr. Maxwell concluded that Plaintiff "basically" suffers from borderline intelligence, some anxiety, and depression. (Tr. at 37). However, Dr. Maxwell opined that Plaintiff's impairments did not meet or equal a listing. (Tr. at 37). In addition, Dr. Maxwell testified that Plaintiff should probably work alone because he may have trouble relating to co-workers or supervisors. (Tr. at 39). Plaintiff's attorney had no questions for Dr. Maxwell. (Tr. at 38)

Plaintiff testified that he is divorced and has a tenth grade education. (Tr. at 39). In school, he took special education classes. (Tr. at 39). Over the last 15 years, Plaintiff's work has included being a "milk carrier" at a service center, a janitor/cleaner, moving furniture at a hospital, and cleaning cell phones. (Tr. at 39-40, 48-50). Plaintiff was let go from his job cleaning cell phones because he was "sick a lot" and missed "a lot of work." (Tr. at 42, 45). In addition, Plaintiff had a job assembling display boards and as a service center manager. (Tr. at 49, 50).

Plaintiff averred that shortness of breath, anxiety attacks, walking, and communicating cause him to be unable to work. (Tr. at 41). However, Plaintiff stated that he has looked for work but is "afraid that [he] won't be able to keep it because [he is] afraid [he will] be walking off the job, or quit, or [take] too much time off to sleep." (Tr. at 45). Plaintiff testified that he can only walk a block or two before he must take a break. (Tr. at 41). Plaintiff also acknowledged that he suffers from depression and anger. (Tr. at 41). Specifically, Plaintiff testified that he keeps to himself, does not communicate with others, and gets very upset when things do not go his way or if there is a lot of noise. (Tr. at 41). Plaintiff stated that he cannot stand in one spot for more than ten minutes because he does not "like to be in the same spot with a lot of people." (Tr. at 42).

A normal day for Plaintiff includes lying in bed and watching TV all day. (Tr. at 43). Plaintiff lives with his "stay-over" girlfriend and her son, whom he talks to about twice a day when he leaves his room. (Tr. at 43). Plaintiff does not do his laundry, does not cook because he burns everything other than eggs, does not go to church, and does not belong to any organizations. (Tr. at 43-44). Plaintiff, however, vacuums (with breaks), washes the dishes, and walks to the grocery store with his girlfriend. (Tr. at 44). In addition, Plaintiff drinks about two beers a day, three days a week. (Tr. at 44-45). Also, Plaintiff walks for exercise but "not as much as [he] is suppose to." (Tr. at 46).

Last to testify was the vocational expert, Ms. Donaldson. (Tr. at 51). Ms. Donaldson classified Plaintiff's prior work as a display assembler as medium -- but light as performed, his cell phone cleaning job as light, his job moving furniture as medium, his job as a janitor as light, and his job as a service center manager as light. (Tr. at 51). When presented with the ALJ's RFC finding as set forth below, Ms. Donaldson opined that Plaintiff would be able to perform his past work as a display maker, a cell phone cleaner, and as a housekeeper/cleaner. (Tr. at 52).

C.  **ALJ's Findings**

The ALJ found Plaintiff met the insured status requirements of the Act through December 31, 2009, and that he had not engaged in substantial gainful activity since January 31, 2007, the alleged onset date. (Tr. at 24). The ALJ concluded that Plaintiff had the severe impairments of coronary artery disease, status post coronary artery bypass graft, hypertension, depression, alcohol abuse, and diabetes mellitus. *Id*. The ALJ also found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404 during the relevant time period. (Tr. at 24-25). The

ALJ determined Plaintiff had the RFC[1] to perform a full range of light work, but with the nonexertional limitations of: 1) limited interaction with co-workers, and 2) avoiding tasks that require verbal skills.  (Tr. at 25-29).  Finally, the ALJ concluded that Plaintiff was able to perform his past relevant work as a housekeeper and/or display assembler, and therefore, he was not disabled as defined by the Act.  (Tr. at 30).

## II.  ANALYSIS

**A**.     **Legal Standards**

    **1**.     **Standard of Review**

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. §§ 405(g), 1383(C)(3).  Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).  In applying the substantial evidence standard, the reviewing court does not re-weigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present.  *Greenspan*, 38 F.3d at 236.  A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or no contrary medical findings.  *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

---

[1] Residual Functional Capacity is a "term of art" and "is determined by combining a medical assessment of the applicant's impairments with descriptions by physicians, the applicant, or others of any limitations on the applicant's ability to work." *Hollis v. Bowen*, 837 F.2d 1378, 1386-87 (5th Cir. 1988).  Succinctly stated, it is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1).

### 2. Disability Determination

The definition of disability under the Social Security Act is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b-(f)). Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This

burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

## B.  Issues for Review

### 1.  Whether the ALJ properly applied the *Stone v. Heckler* standard.

Plaintiff argues that the ALJ applied the incorrect legal standard in assessing the severity of his mental impairments, in violation of *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985). (Doc. 17-1 at 12-14). Plaintiff suggests that the ALJ should have found his anxiety disorder and anxiety/panic attacks severe. (Id. at 13-14). The government responds that any error was harmless because the ALJ proceeded beyond step two of the sequential analysis. (Doc. 20 at 4-5). Plaintiff replies that the harmless error analysis does not apply to a *Stone* error. (Doc. 21 at 1-3).

Pursuant to the Commissioner's regulations, a severe impairment is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). A literal application of these regulations is inconsistent with the Act, however, because the definition includes fewer conditions than indicated by statute. *See Stone*, 752 F.2d at 1104-05. Therefore, the Court of Appeals for the Fifth Circuit has held that an impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Id.* at 1101, 1104-05. In other words, the *Stone* standard does not allow for <u>any</u> interference with the claimant's ability to work. *Sweeney v. Astrue*, 2010 WL 6792819 at *5 (N.D. Tex. 2010). The *Stone* court also held that it would assume that the ALJ applied the

incorrect legal standard to the severity requirement unless the correct standard was set forth by reference to the *Stone* opinion or another of the same effect, or by an express statement that the Court's construction of section 404.1520(c) was used. *Stone*, 752 F.2d at 1106. If the ALJ applies the incorrect legal standard, the Court held that reversal is mandatory. *Id.*

Accordingly, the undersigned previously has reversed and remanded on *Stone* grounds where the ALJ used the incorrect severity standard. *See e.g.*, *Bradford v. Astrue*, 2011 WL 1297528 (N.D. Tex. 2011); *see also Luna v. Astrue*, 2010 WL 582151, *7 (N.D. Tex. 2010) (Ramirez, M.J.; Lynn, J.); *Grant v. Astrue*, 2010 WL 26478, *7 (N.D. Tex. 2010) (Bleil, M.J.; Means, J.); *Neal v. Comm'r of Social Sec. Admin.*, 2009 WL 3856662 *1 (N.D. Tex. 2009) (Godbey, J.); *Key v. Astrue*, 2007 WL 2781930, *4 (N.D. Tex. 2007) (Kaplan, M.J.; Godbey, J.). Nevertheless, the government suggests that any *Stone* error is harmless in this case because the ALJ proceeded beyond step two of the analysis.[1] (Doc. 20 at 4-5).

In fact, *Stone* provides that "[i]n view of both the Secretary's position in this case and our recent experience with cases where the *disposition has been on the basis of nonseverity*, we will in the future assume that the ALJ and Appeals Council have applied an incorrect standard to the severity requirement," thereby mandating reversal. *Stone*, 752 F.2d at 1106 (emphasis added). Indeed, numerous Fifth Circuit authorities state that reversal based on a *Stone* error is not required if the ALJ does not terminate the case at step two of the sequential analysis. *See Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987) (finding that appellant's argument that the ALJ

---

[1] The undersigned has recently entered a *Memorandum Opinion* denying summary judgment to a different claimant on this same ground. In that case, the government squarely presented and fully briefed for this Court for the first time, the argument that *Stone* error is harmless where the ALJ proceeds beyond step two of the sequential analysis. *See Jones v. Astrue*, No. 3:11-CV-107-BK. The undersigned found in that case that, although the ALJ did not explicitly find the claimant's depression and cervical radiculopathy to be severe, the ALJ did assess the effect of those impairments in formulating the claimant's RFC, and, thus, the *Stone* error was harmless. (*Id.*, Doc. 30 at 12).

erred in failing to find her back problems severe was not grounds for a remand because the case did not implicate the "non-severity" of plaintiff's condition since the ALJ continued through step four of the sequential analysis); *Jones v. Bowen*, 829 F.2d 524, 527 n.1 (no *Stone* error where ALJ properly found that the claimant's hypertension was "mild," but proceeded through step five, rather than denying benefits "prematurely . . . based on an improper determination of 'non-severity'"); *Chaparro v. Bowen*, 815 F.2d 1008, 1011 (5th Cir. 1987) (dicta stating that even though the ALJ failed to cite to *Stone*, the claimant's *Stone* argument was "irrelevant to the disposition of the case" because the case was not decided at step two; specifically, the ALJ found that the claimant could return to his past relevant work, "an inquiry unaffected by the test set forth in *Stone*); *Lopez v. Bowen*, 806 F.2d 632, 634 n.1 (5th Cir. 1986) (no *Stone* error occurred where the ALJ found that the claimant did suffer from "severe" impairments, but proceeded to find that the impairments did not prevent him from doing his past relevant work); *see also Anthony v. Sullivan*, 954 F.2d 289, 294 (5th Cir. 1992) (stating that "*Stone* merely reasons that the [severity] regulation cannot be applied to summarily dismiss, *without consideration of the remaining steps in the sequential analysis*, claims of those whose impairment is more than a slight abnormality" and noting that if the claimant does not have a "severe" impairment, the ALJ typically will deny the claim without consideration of the remaining steps in the sequential analysis) (emphasis added).

Further, if the ALJ proceeds past step two of the sequential evaluation process, it is presumed that the ALJ found that a severe impairment existed unless the ALJ states otherwise. *Reyes v. Sullivan*, 915 F.2d 151, 154 & n.1 (court could infer that the ALJ found that the claimant's hypertension was a severe impairment because the ALJ found that the hypertension did not prevent the claimant from performing his past relevant work); *Mays v. Bowen*, 837 F.2d

1362, 1364 (5th Cir. 1988) (holding that ALJ did not err in not explicitly finding an impairment severe where the ALJ reached the fifth step of the sequential analysis in evaluating the claim and, as a result, implicitly found a severe impairment to exist); *Shipley v. Bowen*, 812 F.2d 934, 935 (5th Cir. 1988) (court could infer that the ALJ found that the claimant's back injury was a severe impairment because the ALJ found that the injury did not meet or equal a listed impairment and did not prevent the claimant from working as a security guard); *Moon v. Bowen*, 810 F.2d 472, 473 (5th Cir. 1987) (noting that the ALJ implicitly found that a severe impairment existed because he proceeded to step five).

Thus, even in those cases where the ALJ does not explicitly find an impairment to be severe, a *Stone* error is not reversible if the ALJ proceeded beyond the second step of the five-step analysis in analyzing the claimant's impairments, thereby allowing the district court to infer that the ALJ found the impairment severe. In other words, the district court properly can draw this inference where the ALJ considers the impairments in question at later stages of the five-step sequential analysis, which stages are premised on a finding at the second step of the analysis that the impairments were severe. *See Reyes*, 915 F.2d at 154 & n.1. This is to be distinguished from the situation wherein the ALJ commits a *Stone* error by applying an incorrect severity standard, explicitly rejects one or more of the claimant's impairments as non-severe based on that error, and proceeds to the later steps of the sequential analysis only with respect to other claimed impairments. *See Loza v. Apfel*, 219 F.3d 378, 393, 399 (5th Cir. 2000).

In the case at bar, the ALJ clearly committed a *Stone* error because he did not expressly cite *Stone*, nor did he refer to another opinion of the same effect. Instead, the ALJ stated that an impairment or combination of impairments is severe if it "significantly limits an individual's ability to perform basic work activities." (Tr. at 23). Further, he said that an impairment or

combination of impairments is not severe when "medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work." *Id.* Although the ALJ did refer to 20 C.F.R. §§ 404.1521 and 416.921, and SSRs 85-28, 96-3p, and 96-4p, none of these sources substitute as a proper construction of the standard.

Although the ALJ applied the incorrect severity standard, he found severe Plaintiff's coronary artery disease, status post coronary artery bypass graft, hypertension, depression, alcohol abuse, and diabetes mellitus, and proceeded to analyze those impairments at step four of the sequential analysis. (Tr. at 24); *Adams*, 833 F.2d at 512. Moreover, while the ALJ did not explicitly find Plaintiff's anxiety disorder and anxiety/panic attacks to be "severe," he did address those impairments at step four. (Tr. at 27, 29). Accordingly, it is presumed that the ALJ also found Plaintiff's anxiety disorder and anxiety/panic attacks to be severe impairments. *Reyes*, 915 F.2d at 154 & n.1. Thus, reversal is not required because the ALJ proceeded beyond step two in the sequential analysis in considering each of these impairments. *See* SSR 96-8p, 20 C.F.R. § 404.1523 (in assessing RFC, the ALJ must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not severe).

**2. Whether the ALJ improperly substituted his opinions for those of the treating physician.**

Plaintiff argues that the ALJ erred in summarizing for the medical expert medical evidence received just prior to the administrative hearing, rather than allowing the medical expert to independently evaluate the new evidence. (Doc. 17-1 at 14-15). Specifically, Plaintiff contends the ALJ failed to mention to the medical expert certain aspects of the new evidence. *Id.* Defendant responds that the ALJ did not commit legal error because he described the evidence accurately and Plaintiff's counsel did not object to the ALJ's characterization of the evidence or

ask any questions of Maxwell. (Doc. 20 at 6-7). Plaintiff replies that it was improper for the ALJ to decide what evidence the medical expert would find important. The Court finds Plaintiff's argument to be without merit.

The ALJ owes a duty to a claimant to develop the record fully and fairly to ensure that his decision is an informed decision based on sufficient facts. *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996). "*When a claimant is not represented by counsel*, the ALJ owes a heightened duty to 'scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id*. (emphasis added). The decision of an ALJ will be reversed as not supported by substantial evidence if the claimant shows (1) that the ALJ failed to fulfill his duty to adequately develop the record, and (2) that the claimant was prejudiced thereby. *Id*.

In this case, the Court finds that the ALJ fulfilled his duty to adequately develop the record, and that, even if he failed to do so, Plaintiff was not prejudiced. As an initial matter, the Court concludes that the ALJ did not substitute his own medical assessments for that of the treating doctor, but merely summarized a recently-submitted portion of the treating doctor's records for the medical expert who was testifying by phone. (Tr. at 35-36). A review of the record reveals that, while the ALJ did not relate verbatim the information contained in the medical records, he nonetheless described the medial evidence accurately. (*See* Tr. at 457-519). Plaintiff's counsel did not object to the summary; and because Plaintiff was represented by counsel at the hearing, the ALJ did not have a heightened duty to develop the record. *Brock*, 84 F.3d at 728.

The Court finds that the ALJ did not error by presenting the medical expert with a summarization of newly-submitted medical evidence. In any event, Plaintiff was not prejudiced by the medical expert only receiving the ALJ's summarization of a portion of the medical

records. The newly submitted evidence was but a fraction of the whole record, and a review of the ALJ's findings reveals that all of the evidence was considered.

### 3. Whether the ALJ's RFC finding is supported by substantial evidence.

Last, Plaintiff argues that the ALJ's RFC finding is not supported by substantial evidence. (Doc. 17-1 at 16). Specifically, Plaintiff maintains that the ALJ's finding that Plaintiff can sustain work at competitive levels is unsupported because the ALJ failed to make an express finding that Plaintiff can maintain employment on a regular and continuing basis despite the fact that his ailments "wax and wane." *Id*. Defendant responds that substantial evidence supports the ALJ's RFC determination. (Doc. 20 at 5-9).

The ALJ has the sole responsibility for evaluating a claimant's RFC based on the record as a whole. 20 CFR § 404.1546(c). Plaintiff argues that the ALJ never conducted a *Watson* review, which is required when a claimant's ailment, by its nature, "waxes and wanes in its manifestation of disabling symptoms." *Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003) (discussing *Watson*); *Huet v. Astrue*, 375 Fed. Appx. 373, 375 (5th Cir. 2010) (same). In such situations, the ALJ is required "to make a finding as to the claimant's ability to maintain a job for a significant period of time." *Frank*, 326 F.3d at 619; *Huet*, 375 Fed. Appx. at 375. However, "to support a finding of disability, the claimant's intermittently-recurring symptoms must be of sufficient frequency or severity to prevent the claimant from holding a job for a significant period of time." *Frank*, 326 F.3d at 619. Where the record reasonably shows a disability claimant has the capacity to work, however, such a discussion of the claimant's ability to maintain employment is not needed. *Moore v. Barnhart*, 182 Fed. Appx. 321, 323 (5th Cir. 2006).

Here, the record reasonably shows Plaintiff has the capacity to work, thus, such a discussion of Plaintiff's ability to maintain employment was not required.  The medical and vocational experts opined that Plaintiff could perform work considering the ALJ's RFC determination. (Tr. at 38, 51, 52, 277).  According to Dr. Durfor, Plaintiff can frequently lift 25 pounds and 50 pounds occasionally, and can sit for six hours and stand and/or walk six hours in an eight-hour workday.  (Tr. at 277).  Dr. Maxwell testified that Plaintiff has "low frustration tolerance [but] could work alone or have limited contact with the public and avoid tasks that require verbal skills."  (Tr. 27, 37-38).  The ALJ's RFC finding accounted for the limitations identified by the experts.

Plaintiff stated that he has not gone back to work because he is "afraid [he will] be walking off the job, or quit, or [take] too much time off to sleep."  (Tr. at 45).  However, there is no medical evidence to support Plaintiff's conclusory assertion that his condition by its nature "waxes and wanes."   Thus, the Court concludes that the ALJ's RFC determination is supported by substantial evidence.

### III. CONCLUSION

For the foregoing reasons, the Court recommends that Plaintiff's *Motion for Summary Judgment* (Doc. 17) be DENIED, that Defendant's *Motion for Summary Judgment* (Doc. 20) be GRANTED, and that that the decision of the Commissioner be AFFIRMED.

**SO RECOMMENDED** on November 23, 2011.

RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE